IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-168-CMA

UNITED STATES OF AMERICA,

      Plaintiff,
v.

1. KAREN LYNN MCCLAFLIN,
      Defendant.

---

**INFORMATION**
18 U.S.C. §1343
18 U.S.C. § 1957

---

The ACTING UNITED STATES ATTORNEY charges that:

<u>COUNT ONE</u>
**18 U.S.C. § 1343**

**The Scheme**

1.    Beginning in or about March 2011 and continuing until in or about February 2017, in the State and District of Colorado and elsewhere, defendant KAREN LYNN MCCLAFLIN ("MCCLAFLIN") devised a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises (herein after referred to as the "Scheme"). The Scheme was executed in connection with offering investors the opportunity to invest in Homesource Partner Inc.'s ("Homesource") business of purchasing distressed houses and then reselling the houses at a profit. It was part of the Scheme that:

1

a. From early 2011 through March 2017, McClaflin owned and operated Homesource Partners Inc. (Homesource") in Colorado Springs, Colorado. Homesource's business model was to use investor money to purchase distressed houses in order to resell those houses at a profit by: (1) selling the house within 30 days for an immediate profit; (2) "fixing and flipping" the house for resale within 31-90 days; or (3) fixing the house and renting it if the house failed to sell within 90 days.

b. Between March 2011 and early 2017, in seeking investors for Homesource, McClaflin told investors, potential investors, and intermediaries representing investors that Homesource was seeking loans from investors to finance Homesource's business because Homesource was not able to use traditional bank loans because such loans took too long and some of the distressed homes might not qualify as collateral for such loans.

c. Between 2011 and early 2017, through Homesource marketing materials and verbal statements, McClaflin represented to investors, potential investors and intermediaries representing investors that:

   i. Homesource had access to distressed houses that were deeply discounted and had a team of contractors who would upgrade the properties so Homesource could resell the properties for more than market price;

   ii. each property would be financed by an individual investor whose investment would be secured by a Deed of Trust in first

2

position, or occasionally second position, on that property, which McClaflin would record for the investor;

    iii. the investor's principal investment would be returned to the investor upon the sale of the property unless the investor decided to reinvest in another property;

    iv. investors would receive an interest rate of 6% to 15%; and

    v. the properties would normally be sold in 3 months.

d. However, starting in at least late March 2011, McClaflin knowingly and intentionally began having multiple investors "invest" in the same property and placed multiple Deeds of Trust on the same properties such that the amount of the investments purporting to be secured by the Deeds of Trust exceeded the value of the property.

e. Starting in at March or April 2011, McClaflin intentionally did not record all of the Deeds of Trust as promised.

f. Starting in at least January 2013, Homesource's debt had grown too high and the interest payments owed to investors far exceeded the gross profits earned by Homesource.

g. Despite her knowledge as of January 2013 that Homesource's business was failing and that McClaflin was using new investor money to pay interest to prior investors, McClaflin continued to seek and accept investor money for Homesource as described above through at least January 2017.

3

**Execution of the Scheme**

2.   For the purpose of executing the Scheme described in paragraphs 1a. through 1g. above, on or about September 1, 2016, defendant MCCLAFLIN caused to be transmitted the following wire communication in interstate commerce: Homesource investors T.B. and L.B. wired $100,000 from their joint Charles Schwab brokerage account in California to Homesource Partners Inc.'s ENT Credit Union account # xx3200 located in Colorado Springs, Colorado.

In violation of Title 18, United States Code, Section 1343.

## COUNT 2
## 18 U.S.C. §§ 1957

3.   On or about September 2, 2016, in the State and District of Colorado, defendant KAREN LYNN MCCLAFLIN ("MCCLAFLIN") knowingly engaged in the following monetary transaction, which was by, through, and to a financial institution and affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343: on September 2, 2016, defendant MCCLAFLIN transferred $40,857.12 from Homesource Partners Inc.'s ENT Credit Union account # xx3200 to ENT Credit Union account # xx2662 held in defendant MCCLAFLIN's name.

**Forfeiture Allegation**

4.   The allegations contained in Counts One and Two of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture

pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1).

5. Upon conviction of the violation alleged in Count One of this Information involving a scheme to commit violations of 18 U.S.C. § 1343, defendant MCCLAFLIN shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to the entry of a money judgment in the amount of proceeds obtained by the scheme and by the defendant.

6. Upon conviction of the violation alleged in Count Two of this Information involving a violation of 18 U.S.C. § 1957, defendant MCCLAFLIN shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all of the defendant's right, title and interest in all property, real or personal, involved in such offense, or all property traceable to such property, including, but not limited to the entry of a money judgment in the amount of proceeds obtained by the scheme and by the defendant.

7. If any of the property described above, as a result of any act or omission of the defendant:

    a) cannot be located upon the exercise of due diligence;
    b) has been transferred or sold to, or deposited with, a third party;
    c) has been placed beyond the jurisdiction of the Court;
    d) has been substantially diminished in value; or
    e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

ROBERT C. TROYER
ACTING UNITED STATES ATTORNEY

s/
By: Pegeen D. Rhyne
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
pegeen.rhyne@usdoj.gov