**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 17-cr-00168-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    1. KAREN LYNN MCCLAFLIN,

    Defendants.

_____

**GOVERNMENT'S OBJECTIONS TO THE
PRESENTENCE REPORT [DOC. # 16]**
_____

The United States of America, by Assistant United States Attorney Pegeen D. Rhyne, hereby files the Government's Objections to the Presentence Report [Doc. # 16].

**Enhancement for Victims Under 2B1.1(b)(2)**

The government objects to paragraphs 32 and 43 of the Presentence Report, which assert that the instant offense resulted in substantial hardship to 25 or more victims and apply the corresponding 6-level enhancement pursuant to USSG § 2B1.1(b)(2)(C). [Doc. # 16 at ¶ ¶ 32 and 43]. At the time the parties entered into the plea agreement, the government did not possess evidence that would support this enhancement. Instead, the plea agreement applied only a 2-level enhancement, pursuant to USSG § 2B1.1(b)(2)(A), because the offense

involved more than ten victims which is what the gathered evidence established at the time the agreement was reached.  The government stands behind the plea agreement and requests that the defendant be given the benefit of the agreement reached as a result of her prompt plea in this case.  The defendant's prompt plea provided genuine value to the investigation and prosecution in this case.  Accordingly, the government requests that the additional 4-level enhancement set forth in paragraphs 32 and 43 not be applied.

Additionally, whether a victim suffered substantial financial hardship for purposes of the enhancements under USSG §§ 2B1.1(b)(2)(B) or (C) is a fact-driven, victim-by-victim analysis.  The Sentencing Guidelines required the Court to consider "among other factors" whether the offense resulted in the victim –

(i)     Becoming insolvent;

(ii)    Filing for bankruptcy

(iii)   Suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv)   Making substantial changes to his or her employment, such as postponing retirement plans;

(v)    Making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi)   Suffering substantial harm to his or her ability to obtain credit.

USSG § 2B1.1, Commentary, App. Note 4(F).  No single factor is determinative,

and the government bears the burden of proving to the Court by a preponderance of the evidence that this enhancement should apply.

Financial harm resulting from fraud is often devastating to the victim, but this enhancement is intended for the more narrow circumstance in which the victim is placed into a life-altering circumstance. While the victim impact statements identify a number of victims who may have experienced such a life-altering circumstance, additional investigation would need to be done and an evidentiary presentation would need to be made in order for the government to carry its burden of proof. Rather than pursue this investigation and evidentiary presentation, the government asks the Court to accept the calculation in the plea agreement.

As a result of the government's objection to this applied enhancement, the government also objects to the offense level calculations set forth in Paragraphs 49, 53, and 118 as well as the Sentencing Recommendation located at R-1.

## Characterization of Marital Status

Paragraph 66 of the Presentence Report describes that defendant McClaflin and her husband separated and filed for divorce in February 2017, which was approximately one month after the fraud in this case was discovered. The divorce became final in on October 2, 2017, with "all financial matters being reserved for future determination." [Doc. #16 at ¶ 66]. Both parties continue to reside in the same house. [*Id.*]. In Paragraph 67, the defendant's ex-husband

admits that the primary reason for the divorce was to secure his assets and states that he hopes to stay together with the defendant because he still loves her. [Doc. #16 at ¶ 67]. A friend of the defendant's corroborated this point of view. [*Id.*]

However, in Paragraph 66, defendant McClaflin states that she considers her ex-husband and herself to be "polite strangers" who continue to reside in the same house because they cannot afford separate residences. [Doc. #16 at ¶ 66]. The government objects to the defendant's characterization of her relationship with her ex-husband and is concerned that it was intentionally false and designed to influence the disposition of their pending "marital" assets as well as assets that were transferred to her ex-husband at suspect times. [Doc. #16 at ¶ ¶ 70, 71, and 103-113]. The government is encouraged that the Receiver reports that the same judge has been assigned to oversee the receivership and the dissolution of the marital estate. [Doc. #16 at fn. 5]. The government further assures the Court that the government's Financial Litigation Unit will scrutinize the "marital" properties and transfers of property to defendant McClaflin's ex-husband to ensure that any money that can be recovered for the victims in this case will be.

### Status of Four High-End Cars Purchased between 2006 and 2014

In Paragraph 101, the defendant's credit report reveals that defendant McClaflin purchased four high-end cars between 2006 and 2014. [Doc. #16 at

¶ 101].   The current status of those cars is unknown; they are not listed among the defendant's assets.   [Doc. #16 at ¶ 100].   Defendant McClaflin reports that she is currently driving a 2011 Mercedez-Benz that she claims is owned by her husband, but which may be one of the four cars purchased by the defendant.   [Doc. #16 at ¶ 101].   This 2011 Mercedez-Benz is listed among her assets with the disclaimer that it belongs to her husband.   [Doc. #16 at ¶ 100].   The defendant should be required to explain what happened to these assets and the circumstances under which her current vehicle was purchased.

## **Money Recovered by the Receiver**

Page R-8 of the Presentence Report recites that the Receiver, who was appointed by the El Paso County District Court to dissolve the defendant's company Homesource Partners Inc., has thus far recovered $6,515,766.06 from the sale of forty properties and hopes to recover an additional $1,250,000 from additional properties that will be sold.   While most of this money will be returned to the victims, the Receiver and his attorney will also be paid from this money.   At present, the Receiver has estimated that their joint fees are approximately $500,000.   If they engage in litigation to recover additional money for the victims, that figure will likely go up.   The government raises this issue only so that the Court has an accurate understanding of what money is available to be repaid to the victims from the receivership.

## **Variant Sentence Recommended by Probation Officer**

In the Presentence Report, the Probation Officer recommends a variant sentence of 60 months. The government objects to this recommendation. For reasons that the government will set forth in more detail in its Motion for Variant Sentence, the government agrees that a variant sentence is warranted in this case, but the government is recommending a variant sentence of 65 months.

Respectfully submitted this 14th day of February, 2018.

ROBERT C. TROYER
United States Attorney

By: *s/Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
(303) 454-0409 (fax)
Pegeen.Rhyne@usdoj.gov
Attorney for United States

## CERTIFICATE OF SERVICE

      I hereby certify that on February 14, 2018, I electronically filed the foregoing **GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT [DOC. # 16]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to any and all counsel of record.

      *s/ Dee Boucher*
      United States Attorney's Office