**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cr-00168-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**KAREN LYNN MCCLAFLIN,**

Defendant.

_____

**REPORTER'S TRANSCRIPT**
**(Change of Plea Hearing)**

_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 3:02 p.m. on the 21st
day of June, 2017, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
PEGEEN D. RHYNE, U.S. Attorney's Office - Denver, 1801
California St., Suite 1600, Denver, CO 80202

**FOR THE DEFENDANT:**
THOMAS J. HAMMOND, Attorney at Law, 1544 Race St., Denver,
CO 80206

```
1                        JUNE 21, 2017

2              (Proceedings commence at 3:02 p.m.)

3              THE COURT:  You may be seated.

4              Court calls Criminal Case No. 17-cr-00168-CMA,

5     entitled United States v. Karen Lynn McClaflin.

6              Counsel, would you enter your appearances.

7              MS. RHYNE:  Good afternoon, Your Honor, Pegeen

8     Rhyne for the United States.

9              THE COURT:  Good afternoon.

10             MR. HAMMOND:  Good afternoon, Your Honor, I am Tom

11    Hammond, on behalf of Ms. McClaflin.  She is seated to my

12    right.  Also with us is Matthew Werner.  He is an attorney

13    in Colorado Springs.  He has been assisting her in some of

14    the civil issues.

15             THE COURT:  Good afternoon.

16             All right.  Mr. Hammond, would you and

17    Ms. McClaflin please approach the podium.

18             Ms. West, would you please administer the oath to

19    Ms. McClaflin.

20             COURTROOM DEPUTY:  Ms. McClaflin, would you raise

21    your right hand, please.

22                        KAREN MCCLAFLIN

23    having been first duly sworn, answers questions of the

24    Court as follows:

25             THE DEFENDANT:  I do.
```

1          THE COURT:  The record reflects that the defendant

2     was charged by information dated May 17, 2017, and

3     arraigned on that same date, where she waived Indictment,

4     agreed to proceed on the Information, and entered a plea

5     of not guilty to two counts relating to wire fraud and

6     money laundering.

7          Three days later, on May 20, 2017, the defendant

8     filed with this Court a notice of disposition and

9     requested that this matter be set for a change of plea

10    hearing.

11         Mr. Hammond, it is my understanding that pursuant

12    to a plea agreement, your client wishes to enter a plea of

13    guilty to Counts 1 and 2 of the information.  Count 1

14    charges violation of 18 United States Code Section 1343,

15    wire fraud, and Count 2 charges violation of 18 United

16    States Code Section 1957, money laundering.  She also

17    agrees to admit the forfeiture allegation.  Is that

18    correct?

19         MR. HAMMOND:  That's correct, Your Honor.

20         THE COURT:  The matter is before this Court for a

21    change of the defendant's plea, for consideration of an

22    advisement with respect to the proposed plea agreement,

23    and for re-arraignment under Federal Rule of Criminal

24    Procedure 10.

25         However, before we proceed any further, I want to

1  address an issue, because I note that although the

2  defendant agrees to restitution of up to $20 million, she

3  reserves the right to oppose the United States Sentencing

4  Guideline Section 2B1.1(b)(1)(K) loss enhancement, which

5  the Government estimates is 20 levels for loss between

6  $9.5 million and $25 million.

7      She also reserves the right to challenge or oppose

8  the United States Sentencing Guideline Section

9  2B1.1(b)(16)(A) 2-level enhancement; that the defendant

10  derived more than $1 million in gross receipts from one or

11  more financial institutions.

12      Mr. Hammond, that appears to me to be an

13  inconsistent position.  What does the defendant contend is

14  the loss amount and the restitution amount in this case?

15      MR. HAMMOND:  That's the problem, Your Honor.  At

16  this point, I don't think anybody really knows.  That is

17  one of the -- that is the primary reason why we are asking

18  for an additional 6 months between the date of the plea

19  today and the date of sentencing.

20      I have heard a number of different figures.  I

21  understand what the Government's calculation is.  I've

22  also heard different figures -- and I believe that the

23  calculation is, in part, based upon the receiver's

24  calculation of loss in this case.  But I've also heard

25  some other things from the receiver, himself, that

1    suggests it may actually be below that amount of money.

2            THE COURT:  All right.  Ms. Rhyne, what does the

3    Government contend is the loss amount and restitution

4    amount?

5            MS. RHYNE:  Your Honor, we agree that that is still

6    being determined.  The IRS agent assigned to the case has

7    been, and will continue to painstakingly go through

8    documents, bank records, to determine with specificity

9    what that is.

10            It was the Government's intention not to have those

11    two items in the plea agreement be in conflict, but to put

12    Ms. McClaflin on notice that the restitution the

13    Government may seek may be up to $20 million, and that the

14    Government believes the loss in this case will be in that

15    guideline range of 9 million to -- excuse me 9.5 million

16    to 25 million.

17            But, at the end of the day, when those calculations

18    have been finalized by the Government, she would have the

19    ability to dispute that.  So we didn't see those two items

20    in conflict.

21            I can give you the Government's best approximation

22    right now, but it is an approximation.  We won't have a

23    final number before we present in writing to the Court.

24            THE COURT:  Well, the Information alleges the

25    defendant and her partner originally began their franchise

1    in December of 2005.  Does the Government assert that the

2    defendant was involved in fraud from the beginning, in

3    December 2005?

4        MS. RHYNE:  Your Honor, we don't have evidence

5    dating back that far.  Our evidence, as far as fraud goes,

6    begins, I believe, as set forth in the factual basis,

7    March of 2011.

8        THE COURT:  All right.  Well, that is a problem for

9    me, then, because -- let me get to that allegation in the

10   Information.  You say that, "By 2011, Trademark had

11   accumulated so much debt that McClaflin's partner declared

12   bankruptcy and their partnership was terminated.  Rather

13   than declare bankruptcy herself, McClaflin transitioned to

14   another company with the same "fix and flip" business

15   model as Trademark."  She started Homesource Partners, et

16   cetera.

17       The reason that poses a problem for me is that I

18   have been through a similar real estate fraud case in the

19   last few years in which the defendant pleaded guilty to an

20   Information very quickly and rushed to enter a plea of

21   guilty.  And at the time, I was so green on the bench that

22   I thought, this is wonderful.  And then it took me years

23   to get through what that loss amount was, and I am not

24   going through that again.

25       As with this case, the defendant in that case

1    reserved the right to contest the loss enhancement or loss

2    amount and the restitution amount.  Similar to this case,

3    it appears to me here the defendant could argue she did

4    not start out with fraudulent intent, but began engaging

5    in the fraud, as the defendant in the other case did, to

6    cover himself because his business model wasn't working.

7            And rather than just own up to the fraud, he

8    started taking investments from people to pay -- from

9    Peter to pay Paul.  And that seems to be what happened

10   here.

11           In that case the investors invested $11 million and

12   were not paid a cent.  So it seemed very straightforward

13   to me that the loss amount was $11 million.  The Tenth

14   Circuit disagreed with me, because they said if the scheme

15   did not start out as a fraud, the loss is calculated as

16   the difference between the value of the investment

17   properties at the time the fraud began and the value of

18   the properties when that fraud was discovered.

19           What became apparent to me, after days and days of

20   hearings to try to determine that, after it had been sent

21   to me to determine, is that in fraud cases, it is

22   extremely difficult to determine the loss amount because

23   the defendant is not forthcoming with the records, has

24   destroyed records, has manufactured records, has created

25   false records, many things that they do, which prevents us

1    from knowing what the truth in this case is.

2        Because the defendant pled guilty to an Information

3    in that case, and it appears the same as here, that the

4    Government does not have its evidence fully developed as

5    to what the loss amount is.  I spent so much time in those

6    hearings that I might as well had just gone to trial.  And

7    I don't intend to go through that again.

8        So, I guess I have a few questions for you.  When

9    do you contend the fraud began in this case?

10       MS. RHYNE:  May I have a moment to pinpoint it

11   precisely, Your Honor?  Your Honor, our evidence suggest

12   we can prove it started no later than March of 2011, and

13   that is what we are alleging.  We are not alleging

14   anything before that was intentional fraud.  We don't have

15   the evidence of before March of 2011.

16       THE COURT:  And so what information do you have as

17   to loss amount from that date forward?  Are you including

18   -- she started this business in 2005.  And my concern is,

19   the Tenth Circuit has told me that I can't consider

20   anything before the fraud is contended to have started.

21       MS. RHYNE:  And we agree with that, and we've

22   anticipated that.  We will not -- I think this scheme is

23   different, in that people were paid back prior loans,

24   either by rolling into a different investment or a

25   different opportunity.  So it is not as though someone put

1    money into a property in 2005 and it is that same loan on

2    that same property that's resulted in a loss 11 years

3    later.

4         Instead, it is something that that property was

5    resolved in; either they were paid back and then

6    reinvested the money in a different property.  But we have

7    loss relating to the latter years, not the earlier years.

8    That is what we will be presenting to the Court.

9         THE COURT:  How many properties are involved?

10        MS. RHYNE:  I need to consult with the agent on

11   that.  May I?

12        THE COURT:  You may.

13        MR. HAMMOND:  I think there is something else you

14   need to know that is as important, if not more important

15   in the Court's inquiry, and that is that in this case,

16   there are not records that have been destroyed.  There are

17   not records that have been manufactured.  There are not

18   records that have been hidden.

19        In fact, as soon as Ms. McClaflin saw that she

20   could no longer maintain the balance that she was trying

21   to maintain, the FBI agents, the IRS agents, and to some

22   lesser degree, the security agents, did contact her.  She

23   has willingly given all of the documents that they are

24   interested in.  The receiver has documents.  They are

25   working with each other and not at cross purposes.

1      That is the exact reason why we want that extra

2  time.  We want to be able to come into this courtroom at

3  sentencing and provide this Court with the actual facts

4  and have an agreement with the Government that those are

5  correct numbers.

6      THE COURT:  All right.  Ms. Rhyne?

7      MS. RHYNE:  Your Honor, the agent was not prepared

8  to make that estimate.  But I did have a brief moment to

9  speak to the receiver, and he indicates that currently in

10  his possession of items to liquidate in the winding down

11  of her business, there are 40 properties, and there were

12  over a hundred properties in the more recent years.  That

13  is the best figures I have for the Court right now.

14      THE COURT:  So I guess my question is, why should I

15  accept this plea of guilty, then delay sentencing for 6

16  months, as opposed to let's just wait until you can get me

17  a statement of what the actual loss and restitution

18  amounts are, and then I can make a determination as to

19  whether I believe this matter -- whether I should accept

20  the plea agreement in this matter.

21      MS. RHYNE:  Well, pending a guilty plea, Your

22  Honor, as the Court is well aware, we have speedy trial

23  issues.

24      THE COURT:  Well, she filed a disposition.  That

25  tolls speedy trial.

 1          MS. RHYNE:  Certainly I have never had the

 2    experience where that tolled it for a period of 6 months,

 3    but I have no reason to think it wouldn't.

 4          THE COURT:  And if not, we can set it for trial and

 5    you all can go forward.  I just can tell you, I am not

 6    ready to accept this plea without more information on what

 7    that is going to be.  And I don't think it is right to

 8    take a plea agreement and give you 6 months to put your

 9    case together.  I have been burned on this before, I will

10    not get burned on it again.

11          MS. RHYNE:  I do apologize for your prior

12    experience, and I wouldn't say this case is the norm.  But

13    we certainly -- the Government certainly wouldn't have

14    brought this to the Court if we thought we were putting

15    something in front of you that wasn't going to be well

16    handled.

17          THE COURT:  That is what the last case said.  And,

18    as I said, I was naive enough to think this is a great

19    disposition.  And it took years to resolve, and days and

20    weeks of my time.

21          MS. RHYNE:  Okay.

22          MR. HAMMOND:  Your Honor, just -- I just feel like

23    I have to add this.  I don't know who the parties were in

24    that case.  I am not sure I want to know who the parties

25    were in that case.

1              I think this Court has a fair idea of my

2      reputation; that when I walk in the courtroom doors, when

3      I say something, I mean something.  I have never misled a

4      court in this or any other jurisdiction in my career, and

5      I don't intend to now or ever.  That is part of the reason

6      why we're here.

7              I don't say this lightly, because it does not come

8      to me lightly.  Ms. Rhyne and I have been actually working

9      together.  I have been working with the agents.  We have

10     had a number of meetings with all of the agents and the

11     receiver, whoever wants to be a part of it.

12             This is not the typical situation that I'm used to.

13     I understand the Court's concern, because when we come

14     into the courtroom, normally we are in adversarial

15     positions.  I would represent to the Court that in this

16     unique instance, we are not in that adversary position.

17     We are trying to work together to present everything to

18     the Court and everything that is relevant, and do it in

19     agreement, so that there is no argument with either of the

20     parties.

21             THE COURT:  So you are not taking the position that

22     there is no loss?

23             MR. HAMMOND:  No, absolutely not.

24             THE COURT:  That is what happened in the other

25     case.  And I will tell the people who are here, I had

1    people like you coming in, $11 million they invested, and

2    they were paid nothing back.  And the defendant's position

3    was no loss.

4         And based on what the Tenth Circuit told me and the

5    evidence that was not produced by the Government, the

6    Tenth Circuit told me there was no loss.  I can't accept

7    that.

8         So, I'm taking you at your word that that is not

9    the case here; that you all are working together.  I am

10   going to accept the plea.  I don't know that I will accept

11   the plea agreement at this point until I find out what we

12   are going to do with respect to that, but I will accept

13   the plea today.

14        I will treat it as an 11(c)(1)(C), in terms of how

15   I deal with it; I will accept the guilty plea, but not

16   accept the plea agreement until I know where we stand with

17   respect to those issues.

18        MS. RHYNE:  Okay, Your Honor.  Thank you.

19        THE COURT:  All right.  So, Ms. McClaflin, do you

20   understand that you just took an oath to tell me the

21   truth?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  If you answer any of my questions

24   falsely here today, your answers could be used against you

25   in a separate prosecution for perjury or making a false

1    statement.

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Do you also understand that you have

4    the right to remain silent, and do you not have to answer

5    any of my questions?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  Now, before I can accept your plea of

8    guilty, I need to be sure that you understand the charges

9    that are brought against you, that you understand your

10   choices and the consequences to you of those choices, and

11   I also need to be sure that your decision to plead guilty

12   is voluntary, and that you have not been pressured into

13   that decision, and that there is a factual basis for your

14   pleas of guilty.

15        Therefore, before I can accept your pleas, I have

16   to ask you some questions about your plea agreement and

17   the crimes that you are pleading guilty to, and I will

18   need you to answer those questions.  So, for purposes of

19   this hearing, do you give up your right to remain silent

20   to answer the questions I need to ask you?

21        THE DEFENDANT:  Yes, ma'am.

22        THE COURT:  Mr. Hammond, do you concur in the

23   defendant's waiver of her right to remain silent for

24   purposes of this hearing?

25        MR. HAMMOND:  Yes, Your Honor.

 1           THE COURT:  All right.  As we proceed,

 2    Ms. McClaflin, I want to make sure that you understand

 3    that although you have signed this plea agreement, you are

 4    not yet bound by your pleas of guilty.  You will not be

 5    bound until I accept your pleas of guilty.  So you can

 6    change your mind at any point during this hearing up until

 7    the time I accept your pleas of guilty.

 8           Now, if at any time I ask you something or tell you

 9    something that you do not understand, then you need to

10    tell me that you do not understand so I can clarify for

11    you, okay?

12           THE DEFENDANT:  Yes.

13           THE COURT:  If at any time you want to stop and

14    speak directly with Mr. Hammond, that is perfectly fine,

15    just let me know and I will allow you to do that, okay?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right.  What is your true and

18    correct full name?

19           THE DEFENDANT:  Karen Lynn McClaflin.

20           THE COURT:  How old are you?

21           THE DEFENDANT:  I am 58.

22           THE COURT:  What level of school did you complete?

23           THE DEFENDANT:  3 years beyond high school.

24           THE COURT:  Do you have any trouble reading or

25    writing in English?

1            THE DEFENDANT:  No, Your Honor.

2            THE COURT:  Are you under the influence of any

3     drug, narcotic, marijuana, or alcohol?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  Are you under the influence of any type

6     of medicine?

7            THE DEFENDANT:  Antibiotics.

8            THE COURT:  When was the last time you took those

9     antibiotics?

10           THE DEFENDANT:  This morning.

11           THE COURT:  Is there anything about those

12     antibiotics that causes you not to be able to think

13     clearly?

14           THE DEFENDANT:  No, ma'am.

15           THE COURT:  Have you been treated recently for any

16     mental illness or emotional disability of any kind?

17           THE DEFENDANT:  No.

18           THE COURT:  As far as you know, do you suffer from

19     any diagnosed form of mental illness or emotional

20     disability?

21           THE DEFENDANT:  No.

22           THE COURT:  Is there anything about how you feel

23     right now, either physically or emotionally, that prevents

24     you from understanding what is happening in this hearing?

25           THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Mr. Hammond, have you spoken to

2     Ms. McClaflin about these proceedings?

3          MR. HAMMOND:  Yes, Your Honor.

4          THE COURT:  Do you have any reason to believe that

5     she should not go forward with this plea today?

6          MR. HAMMOND:  No, Your Honor.

7          THE COURT:  Do you believe that she is in

8     possession of her faculties and competent to proceed?

9          MR. HAMMOND:  Yes, I do.

10          THE COURT:  Based on the statements of the

11     defendant and her attorney and my observations, I find

12     that the defendant is in full possession of her faculties

13     and is competent to proceed.

14          Now, Ms. McClaflin, have you discussed the charges

15     in the Information with Mr. Hammond?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Has he answered all of your questions

18     about those charges to your satisfaction?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you understand the charges that are

21     brought against you?

22          THE DEFENDANT:  I do.

23          THE COURT:  All right.  Mr. Hammond, would you

24     please outline for the Court your understanding of the

25     plea agreement.

1          MR. HAMMOND:  Your Honor, Ms. McClaflin is going to

2     plead guilty to both Count 1 and Count 2 in the

3     Information.  The plea agreement does contemplate a

4     6-month period between the plea and sentencing, but I

5     think the Court is in agreement with that at this point in

6     time.

7          She agrees to admit to the asset forfeiture

8     allegation in the Information.  She also agrees to waiver

9     of the Indictment in the case, and to pay the $200 special

10    monetary assessment.  She also -- she understands and

11    agrees that the sentence could involve an order of

12    restitution of up to $20 million.

13         Assuming, and I certainly do, that nothing happens

14    to change anyone's mind between now and sentencing, she

15    will receive an additional 3 points off for acceptance of

16    responsibility, and not requiring the Government to

17    prepare for trial.

18         She understands and agrees that she has the right

19    to request a variant sentence for a non-guideline

20    sentence.  And she understands that there is an appellate

21    waiver as part of this plea agreement.

22         THE COURT:  All right.  Ms. Rhyne, do you agree

23    with that description?

24         MS. RHYNE:  I do, Your Honor.

25         THE COURT:  All right.  Ms. McClaflin, do you agree

1    with that description of your plea agreement?

2           THE DEFENDANT:  I do, Your Honor.

3           THE COURT:  Have you had enough time to review and

4    discuss the plea agreement with Mr. Hammond?

5           THE DEFENDANT:  Yes, I have.

6           THE COURT:  Have you had enough time to ask him all

7    of the questions you had about your plea agreement?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Has he answered all of your questions

10   to your satisfaction?

11          THE DEFENDANT:  Yes, he has.

12          THE COURT:  For purposes of the factual basis, may

13   the court rely on the factual basis as set forth on pages

14   6 through 11 of Exhibit 1?  May I?

15          MR. HAMMOND:  Yes.  I am sorry.

16          MS. RHYNE:  The Government agrees, as well, Your

17   Honor.

18          THE COURT:  So, Ms. McClaflin, if you would turn to

19   page 6, at the bottom of that page, and continuing on to

20   page 11, is a statement of the facts that the Government

21   believes it could prove if this matter went to trial.  By

22   entering into this plea agreement, you are admitting all

23   of these facts, and I will treat them as true, both for

24   purposes of considering your plea, and for purposes of

25   determining what sentence I should impose.

1          Now, have you had enough time to review this

2     statement of facts?

3          THE DEFENDANT:  Yes, Your Honor, I have.

4          THE COURT:  Would you like to take any additional

5     time right now to further review that statement of facts?

6          THE DEFENDANT:  No, ma'am.

7          THE COURT:  Do you agree that the facts stated on

8     pages 6 through 11 are true?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Is there any inaccuracy in those facts

11    that you would like to correct at this time?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  Are you pleading guilty because you are

14    guilty?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  And I need you to tell me, in your own

17    words what it is that you did you are pleading guilty to.

18         THE DEFENDANT:  When I started my company,

19    Homesource Partners, there was some debt that I brought

20    over from the Trademark business.  My partner decided to

21    claim bankruptcy.  It was the end of our franchise, and I

22    did not renew it.  And I didn't want to claim bankruptcy

23    on these investors.

24         And I believed that I could, you know, put this

25    thing together.  And with a good real estate market, I

1    could make it right.  The only way I believed I could do

2    that was to make it bigger.  It was a great buyer's

3    market.  And we had our building and our crews and

4    everything seemed to be working to our benefit, until the

5    housing market crashed.  And then we were top heavy with

6    houses.

7         My debt load was high, paying the investors.  And I

8    felt really obligated to honor that, and so I kept moving

9    forward and believing that I could make this work.  And I

10    made mistakes, and I committed crimes, and I crossed the

11    line, and I know that.  I wish I could go back and do

12    things differently.  I wish a lot of things.

13         But I genuinely believed, up until the time that

14    the whole thing collapsed, that I could somehow make this

15    right and make these people whole, because I care so much

16    about them.  And this has been really hard.

17         I never wanted to disappoint them.  And I tried so

18    hard.  And maybe that is why I made all of the mistakes

19    that I made.  And I knew I shouldn't have been doing that.

20    I just kept believing that if I could just get up every

21    morning and just work real hard, that I could make sure

22    that they were okay.  And I still believed --

23         (Off-the-record discussion had.)

24         THE WITNESS:  Mr. Hammond reminded me that I --

25         THE COURT:  You have told me you made mistakes.

1    That is not what you are pleading guilty to.  You are

2    pleading guilty to fraud.  You defrauded these people.

3    What did you do there that you are pleading guilty to?

4            THE DEFENDANT:  When we would either buy a house

5    or, in some cases, we would refinance a house with a

6    different investor's money.  I would make representations

7    that were not true.  That the new investor's money would

8    take care of the lien on the property, and I wasn't able

9    to pay off that lien because I had so many other investors

10   to pay.  And the value of the property was less than the

11   value of the encumbrances of the deeds against the

12   property.

13           And sometimes I didn't record them.  And I told

14   them that I would record them.  And eventually --

15   sometimes we would.  But I didn't record them.  And it got

16   to be bigger and bigger.  And I wasn't sure how I was

17   going to fix it.

18           THE COURT:  All right.  Ms. Rhyne, is the

19   Government satisfied with the factual basis as

20   supplemented by the plea agreement?

21           MS. RHYNE:  Yes, Your Honor.

22           THE COURT:  All right.  Ms. McClaflin, would you

23   now turn to the signature pages of both Exhibits 1 and 2,

24   and tell me if that is your signature on both of those

25   documents.

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  As to both?

3           MR. HAMMOND:  I am sorry, Your Honor?

4           THE DEFENDANT:  As to both, yes, ma'am.

5           THE COURT:  When you signed Exhibits 1 and 2, did

6    you do that voluntarily?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  Was Mr. Hammond present with you when

9    you signed Exhibits 1 and 2?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Did he answer all of your questions

12   about your plea agreement to your satisfaction before you

13   signed Exhibits 1 and 2?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Mr. Hammond, do Exhibits 1 and 2 bear

16   your signature?

17          MR. HAMMOND:  Yes.

18          THE COURT:  Did you review Exhibits 1 and 2 with

19   your client?

20          MR. HAMMOND:  Yes, I did.

21          THE COURT:  Did you answer all of her questions?

22          MR. HAMMOND:  Yes.

23          THE COURT:  Do you believe she understands the

24   contents of Exhibits 1 and 2?

25          MR. HAMMOND:  To the extent that I'm not violating

1    any attorney/client privilege, yes, I do.

2        THE COURT:  All right.  Ms. Rhyne, does Exhibit 1

3    bear your signature?

4        MS. RHYNE:  It does, Your Honor.

5        THE COURT:  All right.  At this time,

6    Ms. McClaflin, I need to make sure that you understand all

7    of your legal rights.  I am sure Mr. Hammond has discussed

8    these with you, but I have to go through them with you, as

9    well.  You have the following constitutional rights you

10   will be giving up if you plead guilty.

11        You have the read to plead not guilty to any

12   offense charged against you.  Because you have already

13   entered a plea of not guilty to these charges, you have

14   the right to maintain that plea of not guilty.

15        You have the right to a speedy and public trial.

16   You have the right to a trial by a jury of 12 persons

17   whose verdict must be unanimous.  At trial, you would be

18   presumed innocent, and the Government would have to prove

19   your guilt by proving each element of each of those

20   offenses against you beyond a reasonable doubt.

21        If both you and the Government give up your right

22   to a jury trial, you have the right to be tried by the

23   Court; that means by me as the Judge.

24        You have the right to have competent and effective

25   assistance of a lawyer to represent you throughout these

1    criminal proceedings, even if you do not enter a plea of

2    guilty.  If you cannot afford a lawyer, one would be

3    appointed to represent you free of charge, and that lawyer

4    would assist you at trial and at every other stage of

5    these criminal proceedings.

6         At trial, you would have the right, with the

7    assistance of your lawyer, to confront and cross-examine

8    all witness and to challenge all evidence presented

9    against you.

10        At trial, you would also have the right to have

11   witnesses subpoenaed and made to come into court to

12   testify on your behalf.  And if you cannot afford to pay

13   for those subpoenas, I would order that they be issued and

14   served without any charge to you.

15        At trial, you would have the right to testify

16   yourself on your own behalf, but you also have the

17   privilege against self-incrimination; that means that you

18   have the right not to testify or to make any statement

19   that would incriminate you in any way.

20        Now, if you went to trial and you decided not to

21   testify, I would, at your request, tell the jury that it

22   could note use your decision not to testify against you in

23   any way.  By pleading guilty you are giving up that right,

24   and you are incriminating yourself.

25        If you went to trial and you were convicted, you

1    would have the right to appeal your conviction.  And even

2    though you are pleading guilty, you would also have the

3    right to appeal the sentence that I impose.

4         Now, have you discussed all of these rights with

5    Mr. Hammond?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  Do you understand all of these rights?

8         THE DEFENDANT:  I do.

9         THE COURT:  Do you understand that by entering into

10   this plea agreement, you are giving up your right to

11   appeal or otherwise challenge the prosecution, conviction,

12   and sentence under the circumstances that are set forth in

13   your plea agreement?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Do you understand that if I accept your

16   plea of guilty, you will be incriminating yourself, and

17   you will have given up, now and forever, your right to a

18   jury trial and most of the rights I have just described to

19   you?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Do you need any more time to speak to

22   Mr. Hammond about these rights or your waiver of these

23   rights?

24        THE DEFENDANT:  No, Your Honor.

25        THE COURT:  Do you give up these rights?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  Mr. Hammond, are you satisfied that

3    each of these waivers by your client is knowingly,

4    voluntarily, and intelligently made?

5          MR. HAMMOND:  Yes, Your Honor.

6          THE COURT:  And do you concur in each of the

7    waivers?

8          MR. HAMMOND:  Yes.

9          THE COURT:  Now let's talk about the charges.

10         Ms. Rhyne, would you please inform Ms. McClaflin of

11   the charges to which she will be pleading guilty, and

12   state the elements of those charges.

13         MS. RHYNE:  Yes, Your Honor.  Thank you.  As to

14   Count 1, which charges a violation of Title 18 United

15   States Code Section 1343; wire fraud, the elements that

16   the Government would have to prove beyond a reasonable

17   doubt if this were to go to trial are as follows:

18         The defendant devised a scheme to defraud or to

19   obtain money by means of false or fraudulent pretenses

20   representations, or promises.  The defendant acted with

21   the specific intent to defraud or to obtain money by means

22   of false or fraudulent pretenses, representations, or

23   promises.  The defendant used or caused another person to

24   use interstate wire communication facilities for the

25   purpose of carrying out the scheme.  And, fourth, the

1    scheme employed false or fraudulent pretenses,

2    representations, or promises that were material.

3        With respect to Count 2, which charges a violation

4    of Title 18 United States Code Section 1957; engaging in a

5    monetary transactions from property derived from wire

6    fraud, the Government would have to prove beyond a

7    reasonable doubt the following elements if this case were

8    to proceed to trial:

9        First, the defendant engaged in a monetary

10    transactions affecting interstate commerce.  Second, the

11    monetary transactions conducted involved

12    criminally-derived property.  Third, the value of the

13    criminally-derived property exceeded $10,000.  Fourth, the

14    defendant knew the transaction involved criminally-derived

15    property.  And, fifth, the transaction took place within

16    the United States.

17        THE COURT:  So, Ms. McClaflin do you understand

18    that if this matter went to trial, the Government would

19    have to prove each of those elements she just read to you

20    against you beyond a reasonable doubt?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  Ms. Rhyne, could you also state the

23    maximum and mandatory penalties for the charges, including

24    special assessment, supervised release, and restitution.

25        MS. RHYNE:  Yes, Your Honor.  Thank you.

1          For Count 1, wire fraud, the statutory maximum

2     penalties for that offense is not more than 20 years of

3     imprisonment; a fine of not more than the greater of

4     $250,000, or twice the gross gain or loss from the offense

5     or both; not more than 3 years of supervised release; a

6     $100 special assessment fee; plus restitution in the

7     amount of up to $20 million.

8          With respect to Count 2, the maximum statutory

9     penalty for a violation of 18 U.S.C. 1957 is 10 years of

10    imprisonment; a fine of not more than the greater of

11    $250,000, or twice the amount of the criminally-derived

12    property or both; 3 years supervised release; and a $100

13    special assessment fee.

14          THE COURT:  All right.  So, Ms. McClaflin, do you

15    understand the consequences to you of entering these pleas

16    of guilty, including the maximum sentence I could impose?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Mr. Hammond, have you reviewed with and

19    explained to Ms. McClaflin the sentencing computation

20    provisions that are contained in the plea agreement?

21          MR. HAMMOND:  Yes, Your Honor.

22          THE COURT:  Have you told her anything different

23    than what is set forth in that section of the plea

24    agreement?

25          MR. HAMMOND:  No.

1        THE COURT:  I understand there is a dispute as to

2   what the offense level is in this case.  But, according to

3   the Government, what is the estimated range that will

4   apply under the advisory sentencing guidelines?

5        MS. RHYNE:  I am sorry, are you asking me, Your

6   Honor?

7        THE COURT:  Yes.

8        MS. RHYNE:  The Government's calculation is that

9   the resulting offense level would be a level 29.  We

10  expect she will have a criminal history category of I.

11  And so our estimate is the advisory guideline range from

12  these calculations would be 87 to 108 months in prison.

13       If the Government is correct in believing that her

14  Criminal History Category is I, however, given that that

15  might change, because the probation office is the expert

16  in calculating criminal history, if it was determined that

17  her criminal history category was a level VI, it could go

18  up to 188 months.

19       THE COURT:  All right.  So, Ms. McClaflin, you need

20  to understand that this is only an estimate at this time.

21  And there is a dispute, and at least at this time it is

22  unclear what your offense level will be, because it starts

23  at a 7, and then according to the Government, it increases

24  20 points because you have between 9.5 and $25 million in

25  potential loss here.  That is what is in dispute between

1    your attorney and the Government's attorney.

2          It is possible that the presentence investigation

3    report could contain additional information that would

4    also change that calculation.

5          In addition, you need to understand that I am

6    obligated by law to impose a sentence that is sufficient,

7    but not greater than necessary, to promote respect for the

8    law; to provide a just punishment; to adequately deter

9    criminal conduct; to protect the public from further

10   crimes; and to provide you with any needed educational or

11   vocational training, medical care, or other correctional

12   treatment in the most effective manner.

13         Now, to fashion a sentence that meets all of those

14   objectives, I will be considering the nature and

15   circumstances of this offense, your history and

16   characteristics, the types of sentences that are available

17   to me, what the guidelines would recommend to me, and the

18   need to avoid unwarranted sentencing disparities.

19         Now, have you discussed these elements and factors

20   that I would be considering with Mr. Hammond?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Do you understand these factors and

23   elements?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Now, has Mr. Hammond explained to you

1    that the Federal Sentencing Guidelines are merely advisory

2    to me?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Do you understand that that means that

5    the sentence I impose is entirely 100 percent up to me as

6    the Judge?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  That means I don't have to accept any

9    sentence recommended in the plea agreement or by your

10   attorney.  Do you understand that?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  That also means I can impose a sentence

13   that is more severe, or I can impose one that is less

14   severe than that recommended by the guidelines, as long as

15   I justify why I am doing so.  Do you understand that?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Do you understand that even if you are

18   disappointed with the sentence that I impose, that will

19   not be a basis for you to withdraw your plea of guilty?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Do you know what supervised release is?

22           THE DEFENDANT:  To some extent.

23           THE COURT:  All right.  It is kind of like

24   probation, except it is after you get out of prison, if I

25   send to you to prison.  It is called release, and then

1     there is supervision on top of that.

2          Some of the standard conditions that are imposed is

3     that you cannot commit any new crimes, you cannot use or

4     possess any illegal substances, and you cannot possess any

5     firearms.  And if you violate any of the conditions of

6     supervised release that I impose, that could be the basis

7     for me to revoke your supervised release, and I could send

8     you back to prison for the violations.

9          THE DEFENDANT:  I understand, Your Honor.

10          THE COURT:  All right.  Do you understand that if

11    you are presently on parole, probation, or supervised

12    release in a separate criminal matter, this plea of guilty

13    alone could be the basis to revoke that parole, probation,

14    or supervised release, and you could be returned to prison

15    on the other case?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you understand that you are pleading

18    guilty to two felony offenses?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you understand that conviction of a

21    felony offense could deprive you of valuable civil rights,

22    such as right to vote the right, the right to hold public

23    office, the right to serve on a jury, and the right to

24    possess a firearm of any kind?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you understand that in the federal

2    criminal system, parole has been abolished, and if you are

3    sent to prison, you will not be released early on parole?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Has anyone, including Mr. Hammond, made

6    any promises, representations, or guarantees of any kind

7    to you about your case or the specific sentence I would

8    impose in order to persuade you to plead guilty?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  Has anyone forced to you plead guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Has anyone attempted in any way to

13    threaten you, your family, or anyone close to you in order

14    to force you to plead guilty?

15         THE DEFENDANT:  No.

16         THE COURT:  Mr. Hammond, did you review the facts

17    of this case and all of the discovery provided by the

18    Government?

19         MR. HAMMOND:  Yes.

20         THE COURT:  Did you review those fact and that

21    discovery with Ms. McClaflin?

22         MR. HAMMOND:  I am sorry, Your Honor?

23         THE COURT:  Did you review those facts and that

24    discovery with Ms. McClaflin?

25         MR. HAMMOND:  Yes, I did.

1          THE COURT:  Did you pursue with her any potential

2    defenses she might have to the charges?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you advised her concerning the

5    legality or admissibility of any statements, confessions,

6    or other evidence the Government has against her?

7          MR. HAMMOND:  Yes.

8          THE COURT:  To the best of your knowledge, is she

9    pleading guilty because of any illegally-obtained evidence

10   in the possession of the Government?

11         MR. HAMMOND:  No.

12         THE COURT:  Did you and she agree that it was in

13   her best interest to enter this plea of guilty?

14         MR. HAMMOND:  Yes.

15         THE COURT:  Is it your opinion that she is entering

16   these pleas freely and voluntarily, with full knowledge of

17   the charges and the consequences of her plea?

18         MR. HAMMOND:  Yes, it is.

19         THE COURT:  Other than as set forth in the plea

20   agreement, have there been any promises, representations,

21   or guarantees made either to you or to Ms. McClaflin?

22         MR. HAMMOND:  No, Your Honor.

23         THE COURT:  Do you know of any reason why I should

24   not accept her pleas of guilty?

25         MR. HAMMOND:  No.

1        THE COURT:  Do you concur in the waiver of jury

2   trial and in the pleas?

3        MR. HAMMOND:  Yes.

4        THE COURT:  Ms. Rhyne, other than as set forth in

5   the plea agreement, has the Government made any promises,

6   representations, or guarantees either to Ms. McClaflin or

7   her attorney?

8        MS. RHYNE:  No, Your Honor.

9        THE COURT:  Does the Government consent to

10  Ms. McClaflin's waiver of jury trial conditioned upon this

11  matter being resolved in accordance with the plea

12  agreement?

13       MS. RHYNE:  Yes, Your Honor.

14       THE COURT:  All right.  Ms. McClaflin, are you

15  satisfied with the representations that Mr. Hammond has

16  provided to you?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Have you told him everything you know

19  about your case?

20       THE DEFENDANT:  Yes, I have.

21       THE COURT:  Do you believe he has fully considered

22  any defenses you might have to the charges?

23       THE DEFENDANT:  Yes, I have.  Yes, Your Honor.

24       THE COURT:  Do you believe he has fully advised you

25  concerning your case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you had enough time to discuss

3     your case with him?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did he or anyone else tell you how you

6     had to answer my questions in this hearing today?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  Have you understood everything I have

9     told you and everything I have asked of you here today?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Do you believe you understand the

12    consequences to you of entering this plea of guilty?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you believe you are competent to

15    make the decision to plead guilty?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you know of any reason at all why I

18    should not accept your please of guilty?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Do you understand that all that will be

21    left in your case, in the event I do accept your pleas of

22    guilty, is the imposition of sentence, which could include

23    imprisonment?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Having in mind, then, everything we

1    have discussed to this point regarding your pleas of

2    guilty, the rights you are giving up, and the maximum

3    sentence I could impose, do you still wish to plead

4    guilty?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Are you requesting that I receive,

7    accept, and approve your plea agreement, as stated in

8    Exhibit 1?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Mr. Hammond, any reason not to accept

11   them?

12             MR. HAMMOND:  The only reason I can think of, Your

13   Honor, is a purely procedural one, and that is, as we have

14   discussed a number of times, the delay between plea and

15   sentencing.  I know there are statutory and rule deadlines

16   for the probation department to interview Ms. McClaflin

17   and to get a presentence report -- an initial presentence

18   report to the parties and the final presentence report to

19   the Court.

20             As long as that is something that we can address,

21   so that the probation department can give us the time we

22   need to address the final presentence report, that's my

23   only concern.

24             THE COURT:  I think how I will proceed is I am

25   going to require you all to do sentencing statements to

1    the probation department before they even begin the

2    presentence report.  So, we are going to have a delay --

3    although I will order them to do it, I am going to order

4    it delayed until such time as you all can get the

5    enhancement; the loss amount and restitution amounts

6    worked out, and you provide a sentencing statement to

7    them, and then they can move forward.  And that way I

8    think we can stay in sync with what we need.

9         The problem is, generally -- I think they can do

10   most of the interviewing.  They're generally requesting 12

11   weeks from us; isn't that correct?

12        COURTROOM DEPUTY:  Correct, Your Honor.

13        THE COURT:  If I set this over for sentencing to

14   January, which is what I believe you all have requested,

15   I'm probably going to require you all to have something

16   done and to the probation officer by late October.  Is

17   that going to be workable?

18        MS. RHYNE:  For the Government, it is, Your Honor.

19        THE COURT:  All right.  Ms. Rhyne, any reason not

20   to accept the plea agreement?  And I will tell you, I am

21   not accepting the plea agreement, I have already told you

22   that, but this is kind of standard what I ask.

23        MS. RHYNE:  If you are asking if there is any

24   reason not to accept the guilty plea, no.  I understand

25   the Court's position regarding the agreement, itself.

1          THE COURT:  Other than re-arraigning Ms. McClaflin,

2     do counsel agree that the Court has complied with the

3     requirements of Rule 11?

4          MS. RHYNE:  Yes, Your Honor.

5          MR. HAMMOND:  Yes, Your Honor.

6          THE COURT:  Mr. Hammond, does Ms. McClaflin seek

7     permission to withdraw her pleas of not guilty as to

8     Counts 1 and 2 of the Information?

9          MR. HAMMOND:  Yes, she does.

10          THE COURT:  That permission is granted.  The

11     defendant's pleas of not guilty as to Counts 1 and 2 of

12     the Information are withdrawn.

13          Ms. Rhyne, would you please re-arraign

14     Ms. McClaflin.

15          MS. RHYNE:  Yes, Your Honor.

16          Karen Lynn McClaflin, how do you plead now to Count

17     1 of the Information, charging a violation of wire fraud,

18     in violation of Title 18 United States Code Section 1343;

19     guilty, or not guilty?

20          THE DEFENDANT:  Guilty.

21          MS. RHYNE:  How do you now plead to Count 2 of the

22     information, charging a violation of Title 18 United

23     States Code Section 1957; engaging in a monetary

24     transaction derived from proceeds of wire fraud; guilty,

25     or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  All right.  So at this time,

3    Ms. McClaflin, I need to make certain findings for the

4    Court record.  If you do not understand what I am saying,

5    or if you merely want to stop and speak privately with

6    Mr. Hammond, just ask Mr. Hammond to interrupt me, okay?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  In the matter of Criminal Case No.

9    17-cr-00168-CMA, encaptioned the United States of America

10   v. Karen Lynn McClaflin, the Court, having questioned the

11   defendant and her attorney on the offer of her plea of

12   guilty to Counts 1 and 2 of the Information, charging

13   violation of 18 United States Code Section 1343, and 18

14   United States Code Section 1957, both felonies.

15         The defendant and her attorney, having advised this

16   Court that they have conferred concerning those offered

17   pleas of guilty and all aspects of the charges against the

18   defendant and any defenses she might have.

19         The Court, having observed the defendant's

20   intelligence, demeanor, and attitude while answer the

21   questions in this hearing today.  And the Court, having

22   observed that the defendant does not appear to be under

23   the influence of medicine, drugs, or other substance or

24   factor that might affect her actions or judgment in any

25   manner, the Court finds as follows:

1          The defendant is fully competent and capable of

2     entering an informed plea, and she is aware of the nature

3     of the charges and the consequences of her plea.  She has

4     discussed her plea agreement with her attorney.

5          She has been represented throughout the course of

6     this case and in it this hearing by competent and

7     effective counsel, with whom she has no objection,

8     criticism, or complaint.

9          She has read and understands the terms of her plea

10    agreement.  She has signed both the plea agreement and

11    statement by the defendant.

12         She has voluntarily, knowingly, and intelligently

13    entered pleas of guilty to one count of violation of 18

14    United States Code Section 1343, and one count of

15    violation of 18 United States Code Section 1957.  And she

16    has a full understanding of the nature, circumstances,

17    factual basis, and essential elements of those charges.

18         The defendant's pleas of guilty are not the result

19    of mistake, misunderstanding, fear, coercion, or undue

20    influence.  Her pleas of guilty are not the result of any

21    promises or representations made to her by anyone,

22    including her own attorney, except as to those matters

23    discussed here in this hearing or included in her plea

24    agreement.

25         She understands each of her legal rights in this

1    case, including her right to a trial by jury, her right to

2    be represented during all stages of these criminal

3    proceedings by an attorney, including her right to

4    court-appointed counsel if indigent.

5          She understand the maximum sentence of

6    imprisonment, the maximum fine, the special assessment,

7    and the terms of supervised release and restitution that

8    this Court may impose.

9          She also understands that this Court is not bound

10   by any sentence recommended in the plea agreement.  And

11   she further understands that she will not be able to

12   withdraw her pleas of guilty even if the Court does not

13   follow the recommendation.

14         The defendant understands every essential element

15   of the offenses to which she has pled guilty, and her plea

16   is supported by an independent factual basis containing

17   each of the essential elements of the offense.

18         It is therefore ordered that the defendant's pleas

19   of guilty, as made in open court today, are accepted, and

20   the defendant is adjudged guilty of violation of 18 United

21   States Code Section 1343; wire fraud, and 18 United States

22   Code Section 1957; money laundering.

23         The Court will defer the decision as to whether to

24   accept the plea agreement until the probation department

25   has prepared a presentence report.

1          I am referring the defendant to the probation

2    department for a presentence investigation report.  The

3    probation department shall conduct a presentence

4    investigation and submit a presentence report, as required

5    by Federal Rule of Criminal Procedure 32.

6          However, prior to the probation department having

7    to start that report, I am giving the defendants and the

8    Government until -- what date did we choose, January

9    17th -- so until October 17th.  Let me make sure that is

10   not --

11         MS. RHYNE:  Your Honor, if I could, I have some

12   ambiguous out-of-country plans in October.  If we can do

13   the end of October, that would be helpful to me.

14         THE COURT:  For your statements?

15         MS. RHYNE:  Yes.

16         THE COURT:  I would prefer it before you leave.

17   When do you leave?

18         MS. RHYNE:  Then late September would work out for

19   me.

20         THE COURT:  All right.  So I am going to order that

21   the parties submit a stipulation, if you can reach a

22   stipulation, as to loss amount and restitution amount and

23   the enhancements.  If you can't reach that, then you can

24   submit simultaneously sentencing statements to the

25   probation department, or file it so that the probation

1    department will get copies so they can finalize their

2    presentence report by August --

3         MS. RHYNE:  September.

4         THE COURT:  I am sorry, September 29.  And so the

5    probation department should be advised that they don't

6    have to begin the presentence investigation or report

7    until after they receive those.

8         Ms. McClaflin, so you understand, your sentencing

9    hearing won't occur for several months from now.  Before

10   that sentencing hearing, a probation officer will be in

11   touch with you.  This probably won't happen until after

12   the September deadline we told you about.

13        They will meet with and you talk with you to gather

14   information to be included in your report that I will

15   review in determining what sentence I should impose.  When

16   you provide that information to the probation officer,

17   your lawyer may be present with you if you wish.

18        I will not see that report until it has first been

19   submitted to you, so if you have any objections to the

20   facts in that report or to the guideline calculation,

21   Mr. Hammond will file objections on your behalf.

22        At the sentencing hearing, itself, I am probably

23   going to hear argument on your behalf from Mr. Hammond, I

24   may hear argument on behalf of the Government from

25   Ms. Rhyne, but you also will be allowed to make your own

1    personal statement to me on your own behalf if you wish.

2           For those of you in the courtroom who are victims,

3    you should be getting notice from the probation department

4    for victim impact statements.  And if you wish to speak at

5    that sentencing hearing, you are also allowed to speak at

6    that hearing, you just need to let me know so I know how

7    long I need to plan for the sentencing hearing.

8           A sentencing hearing in this case has been set for

9    January 17, 2018, at 9:00 a.m.

10          Ms. McClaflin, you are ordered to appear on that

11   date and time without further notice or order of the

12   court.  All dates other than the sentencing date are

13   vacated.  Any pending motions are denied as moot.

14          Mr. Hammond and Ms. Rhyne, in addition to the

15   sentencing statement you are going to provide to the

16   probation department and docket with the Court, you are to

17   file any other sentencing positions or motions for variant

18   sentence, and any other motions, at least 14 days before

19   that sentencing date.  Any responses or objections to

20   those must be filed at least 7 days before the sentencing

21   date.

22          All right.  Is there anything further to be brought

23   to the Court's attention?

24          MS RHYNE:  Not by the Government, Your Honor.

25          MR. HAMMOND:  No, Your Honor.

1        THE COURT:  All right.  The Court finds that the

2   defendant's bond conditions do reasonably assure that she

3   will not flee or pose the danger to the safety of any

4   other person or the community.  And, as such, I hereby

5   allow you to remain free on bond subject to the same terms

6   and conditions as set forth in your original order setting

7   the conditions of release.

8        THE DEFENDANT:  Thank you.

9        THE COURT:  Court will be in recess.

10       (Proceedings conclude at 3:49 p.m.)

11       **R E P O R T E R ' S   C E R T I F I C A T E**

12

13       I, Darlene M. Martinez, Official Certified

14   Shorthand Reporter for the United States District Court,

15   District of Colorado, do hereby certify that the foregoing

16   is a true and accurate transcript of the proceedings had

17   as taken stenographically by me at the time and place

18   aforementioned.

19

20       Dated this 22nd day of June, 2017.

21

22       _____

23       s/Darlene M. Martinez

24       RMR, CRR

25