

# James Robert Barash
### Receiver for HomeSource Partners, Inc.

403 South Tejon Street                                   Telephone (719) 578-1335
Colorado Springs, CO 80903

June 30, 2020

Mr. Nathan Chambers, Esq.
303 16th Street, Suite 200
Denver, CO 80202

## KAREN McCLAFLIN

Good afternoon Mr. Chambers;

I am following up on Friday's telephone conversation in my capacity as Court Appointed Receiver for Karen McClaflin, HomeSource Partners, Inc., and various related entities.

My appointment in this case was the result of a unique series of events. Typically, a Receiver is sought by a Bank or group of creditors. In this case, it was Karen McClaflin herself who sought appointment of a Receiver explaining that she knew she did wrong and wanted to do everything in her power to recover as much as possible for the victims. This was strange as it is virtually never the "crook" seeking appointment of a Receiver.

Before I accepted the appointment, I insisted on meeting with Karen to make clear to her that my role was to maximize the return to the creditors and protect the estate. I told Karen, that if she was truthful and helped me in obtaining funds for the victims, that I would make her assistance known to the Court; and conversely that if she told me one lie, that too would be made known to the Court, and she would regret having me appointed as the Receiver. Karen understood and assured me that she would only tell me the truth. She kept her word.

Over the year plus that Karen worked with me, my accountant, the IRS accountant, and the FBI and SEC investigators, she never lied or shaded the truth. The information she gave us always checked out 100%, and much of the information was very damning of Karen. I was surprised at how forthright she was.

The victims in the Ponzi scheme were provided with Deeds of Trust, and were told that they were in "first" positions on identified properties. Unbeknownst to the victims most of the Deeds of Trust were either recorded in second or third, etc. positions, or were unrecorded altogether. For the most part the victims were relatively unsophisticated, and none of them had obtained title insurance.

A local Bank managed dozens of self-directed IRA's that had invested in HomeSource. (It hadn't gotten title insurance either). The Bank, was first to recognize the scam before the other victims realized what was happening. The Bank confronted Karen secured its claims with new loan agreements, security documents, and additional deeds of trust on Karen's marital properties, cross collateralizing everything in one package. The Bank attempted to improve it's position ahead of the other victims.

Had Receiver not successfully challenged the Bank's preferential transfers, the Bank, and another hard money lender would have gotten all the fictional interest promised by HomeSource in addition to attorney's fees and costs in the foreclosures, consuming the entire corpus of the estate.

Karen's application for appointment of a Receiver was strenuously resisted by the Bank which had begun foreclosure proceedings prior to the Motion to Appoint a Receiver. Receiver's first action was a motion to stay the Bank's foreclosure proceedings. Ultimately, after more than a year of intense litigation, the Bank settled with Receiver and gave up it's fictional interest, attorneys fees, foreclosure fees, etc. that it had attempted to secure with it's "preferential" paperwork.

Karen traced transactions spanning a decade through countless banker boxes of records, years of bank statements from different entities, hundreds of real estate closing statements, some of which were correct, and others fictional, etc. She worked with Receiver's accountant, the IRS accountant, and representatives of the FBI and SEC. Without Karen's help we would not have been able to defeat the Banks foreclosure actions, nor would we have recovered any money for the unsecured victims.

To date Receiver has recovered **$9,234,320 for the estate**. It has distributed **$5,042,085 to 34 Secured claimants**; and an additional **$1,682,929 to 78 Unsecured claimants**. This represents 100% return of principal to Secured claimants and thus far 17% of principal to the Unsecured claimants.

Receiver expects to recover additional funds which should materially increase the Unsecured payout. A primary source of those funds is expected from Karen's interest in her marital properties. Karen and James Strange's marriage is dissolved, but the Court has not yet ruled on the property division between them. Karen's share of the marital properties belongs to the Receivership.

Receiver believes that he has reached a satisfactory agreement in principal with Mr. Strange as to which properties will come to the Receivership, subject to the Agreement being written up, signed and approved by the Court. Receiver believes that should happen in the next month or so, and then Receiver will have five more properties to sell.

In addition to her help on the financial tracing and history, Karen is very experienced in marketing real estate in this market. Receiver believes that if Karen is

granted a compassionate release she will continue to help Receiver in maximizing the return on the remaining properties.   One, of these properties is a large, undeveloped single-family site, adjacent to a developed area of high-end homes.  Karen and her ex-husband, who is an architect, have worked on prospective home designs that could be constructed on this site, and have also explored how to get utilities to this site which is not served by any municipal water and sewer provider.

Karen McClaflin knows more about the properties than Receiver does, and her local knowledge can be very helpful in marketing the properties. She is also acquainted with the tenants, who we may be able to sell to and Karen can also assist fix up and possibly sitting in properties for open houses, etc.

I would welcome Karen's assistance with this final phase of wrapping up the receivership.  Upon completion, I expect a further distribution to the unsecured's.  This is extremely heartwarming to me, as so many of them believed that they had lost everything.

After the initial distributions, I received many calls from victims profusely thanking me for my teams efforts and expressing their gratitude.  I hope that the Court recognizes the additional incremental value that Karen's efforts have brought to recoveries thus far and that she is able to help in this final phase.  I'm certain that we will recover more with Karen's help than without it.

Let me know if there is anything further I can help you with on this matter.

Very truly yours,

James Robert Barash
Receiver for HomeSource Partners, Inc